FILED
2019 Dec-06 PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| AFC FRANCHISING, LLC, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:18-cv-00743-AKK |
| } | |
| LAURA FABBRO, } | |
| } | |
| Defendant. } | |
| } | |

## MEMORANDUM OPINION AND ORDER

  Laura Fabbro operates an urgent care franchise on behalf of AFC Franchising, and is purportedly in breach of the franchise agreement for refusing to use the franchise name. Doc. 1. AFC Franchising filed this lawsuit to enforce the agreement. *Id.* Presently before the court is Fabbro's motion to dismiss the case, arguing that AFC waited too late to file.[1] Doc. 24. Although AFC Franchising filed the claim within the relevant statute of limitations, the current motion centers on whether it filed this lawsuit within the abbreviated period provided for in the franchise agreement. More specifically, the issue is choice of law: Maryland law, which the parties agreed would govern the contract, would honor the contract's

---

[1] Fabbro previously moved to dismiss the case for failure to state a claim, or alternatively to transfer the case to New Jersey. Doc. 7. The court denied these motions. Doc. 23.

1

abbreviated period, but Alabama law, the law of the forum, would not. For the reasons stated below, the motion to dismiss is due to be denied.

## I. JURISDICTION

The amount in controversy exceeds $75,000, and the parties are completely diverse, as AFC Franchising is a citizen of Alabama and Fabbro is a citizen of New Jersey. Doc. 1 at 1; *see also* Docs. 20, 21-1. Consequently, diversity jurisdiction exists because "the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different States." 28 U.S.C. § 1332(a)(1); *see also Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010).

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss," and to meet the pleading requirements of Rule 8(a)(2), "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A "complaint does not need detailed factual allegations, but the allegations must be enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for*

*Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citation omitted). In reviewing a motion to dismiss under Rule 12(b)(6), the court "must accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff." *Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018).

### III.  BACKGROUND

The underlying dispute is a curious case of a franchisee refusing to use the franchise name. Fabbro operates an urgent care facility pursuant to a franchise agreement with AFC Franchising. The agreement grants Fabbro a license to own and manage an urgent care facility, and in exchange Fabbro agrees to operate the facility consistent with AFC Franchising's rules and to pay an annual royalty. *See* doc. 1-1 at 6–7, 13. Under the agreement, Fabbro consents to use the franchise's "Marks" as the "sole identification" of the business.[2] Doc. 1-1 at 18.

When Fabbro first executed the agreement in 2009, it was with Doctors Express Franchising, a limited liability company based in Maryland. Doc. 1 at 2;

---

[2] The term "Marks" is commonly used as a shorthand for trademarks. *Trademark*, Black's Law Dictionary, p. 1530 (8th ed. 2004) ("Often shortened to *mark*."). Likewise, the agreement defines the franchise's "Marks" as "certain trademarks, service marks, and other commercial symbols including the mark 'DOCTORS EXPRESS'." Doc. 1-1 at 6.

Doc. 1-1 at 6. The mark for Doctors Express Franchising was "Doctors Express," and Fabbro used this mark when she opened her facility in 2010. Doc. 1 at 2; Doc. 1-1 at 6.

The franchise later changed hands beginning in 2012, when DRX Urgent Care, LLC acquired the Doctors Express system. Doc. 1 at 3. Then, in 2013, "an affiliate" of AFC Franchising acquired the Doctors Express system from DRX. *Id.* These acquisitions included the assignment of the Doctors Express franchise agreements, including the agreement with Fabbro. *Id.* As a result, AFC Franchising assumed the rights of the franchisor under the agreement with Fabbro.[3] *Id.*

In 2015, AFC Franchising decided to discontinue the use of the "Doctors Express" name and mark. Doc. 1 at 5. As an interim measure, AFC Franchising directed its franchisees to change their names to "AFC Doctors Express." *See id.* Shortly thereafter, AFC Franchising directed its franchisees to complete the transition to the names and marks "American Family Care" and "AFC Urgent Care." *See id.* Both times, Fabbro refused. *Id.* at 7. Nearly 200 clinics operate under the "American Family Care" or "AFC Urgent Care" name, *id.* at 3, and apparently Fabbro's "clinic is the only former 'Doctor's Express' clinic nationwide that is still using the 'Doctors Express' name and mark," *id.* at 8.

---

[3] The agreement provides that the franchisor may "assign this Agreement and any other agreement to a third party without restriction." Doc. 1-1 at 31.

The franchise agreement permits the franchisor to order the franchisee to change its name:

> If it becomes advisable at any time for us and/or you to modify or discontinue using any Mark and/or to use one or more additional or substitute trade or service marks, you agree to comply with our directions within a reasonable time after receiving notice.

Doc. 1-1 at 18. The agreement continues in broad terms:

> Our rights in this [section] apply to any and all of the Marks (and any and all portion of any Mark) that we authorize you to use in this Agreement. We may exercise these rights at any time and for any reason, business or otherwise that we think best. You acknowledge both our right to take this action and your obligation to comply with our directions.

*Id.* Leaving no doubt that she was aware of her obligation under this provision, Fabbro negotiated an amendment to the agreement, which required AFC Franchising to split the costs involved with any requested name change.[4] Doc. 1 at 6–7.

Despite the clarity of the agreement, AFC Franchising afforded Fabbro "numerous opportunities to change the name of her clinic, and she repeatedly refused." Doc. 1 at 8. Finally, in January 2017, AFC Franchising sent Fabbro a notice of default under the franchising agreement, *id.*; *see* doc. 7-2, followed by an

---

[4] The amendment states: "Franchisor agrees to equally share in the direct out-of-pocket expenses related to changing the Franchised Business's signs or complying with the request to discontinue use of the Marks." Doc. 1-1 at 64. Consistent with this amendment, AFC Franchising offered to share the cost of the name change. Doc. 1 at 7.

amended notice of default the following month, doc. 1 at 8; *see* doc. 7-4.[5] The notice pointed out that Fabbro's clinic "should have been rebranded to an American Family Care clinic by January 1, 2017," and it gave Fabbro sixty days to "cure such default." Doc. 7-4. Fabbro failed to do so. Doc. 1 at 10.

AFC Franchising took no action after the 60 day period. Instead, in July 2017, it withdrew the notice of default without prejudice. Doc. 1 at 9. Fabbro had reportedly entered into negotiations to sell her clinic to another franchisee, and AFC Franchising did not want to interfere with a potential sale. *Id.* AFC Franchising believes those negotiations have since fallen through, and accordingly filed this action against Fabbro. *Id.* AFC Franchising seeks two forms of relief: specific performance and declaratory judgment, as well as reimbursement for the costs of pursuing this action. Doc. 1.

## IV. DISCUSSION

Fabbro argues in its motion that AFC Franchising failed to file this action within the period of limitations established in the franchise agreement. The agreement states that "all claims . . . arising out of or relating to this agreement . . . must be brought or asserted before the expiration of the earlier of":

---

[5] In the original notice of default, AFC Franchising gave Fabbro thirty days to cure. Doc. 7-2. Thereafter, Fabbro sued in New Jersey state court seeking to enjoin the termination of the agreement, arguing that New Jersey's Franchise Practices Act requires giving franchisees sixty days to cure. Doc. 1 at 8; Doc. 7-3; *see also* N.J.S.A. § 56:10-5. In response, AFC Franchising sent the amended notice of default, which gave Fabbro sixty days to cure the default and also pointed out that Fabbro no longer had authorization to use the "Doctors Express" mark. Doc. 7-4.

- (A) The time period for bringing an action under any applicable state or federal statute of limitations;
- (B) One year after the date upon which a party discovered, or should have discovered, the facts giving rise to an alleged claim; or
- (C) Two years after the first act or omission giving rise to an alleged claim.

Doc. 1-1 at 46 (all caps omitted). Any claims filed outside of the period provided are "irrevocably barred." *Id.*

Fabbro maintains that the one-year period applies. In her view, the clock started when AFC Franchising discovered that she was refusing to change her clinic's name—her refusal is "the fact[] giving rise to an alleged claim." Doc. 1-1 at 46. And the complaint reveals that AFC Franchising discovered that fact in 2015. *See* doc. 1 at 5, 8. Thus, under Fabbro's interpretation, the period lapsed long before AFC Franchising filed this complaint on May 15, 2018.[6]

But the analysis is a bit more complicated than Fabbro is willing to admit.

---

[6] Neither party is precise about when the clock starts. The contract says the clock starts when the party discovers "the facts giving rise to an alleged claim." Doc. 1-1 at 46. The facts that give rise to a claim are those that establish breach. As the contract requires the franchisee to change her marks "within a reasonable time" of the request, a breach seemingly would not occur until a reasonable time elapsed. Doc. 1-1 at 18.
    Fabbro's position seems to be that when the franchisee unequivocally refuses, as she did, the breach is complete and there is no need to wait for a reasonable time to pass. Maybe so. Arguably, by making repeated requests, AFC Franchising extended the period for Fabbro to comply. In the notice of default, AFC Franchising gave Fabbro one last chance to comply within sixty days of February 22, 2017. Doc. 7-4. Conceivably, then, the clock did not start until April 24, 2017. But even under the most generous interpretation for AFC Franchising, the one-year period would have lapsed on April 24, 2018—before the complaint was filed. Thus, no matter when the clock started, if the contract's period of limitations applies, AFC's claims are barred.

7

More specifically, Alabama law would not enforce the abbreviated period of limitations established in the franchise agreement. Alabama law states:

> Except as may be otherwise provided by the Uniform Commercial Code, any agreement or stipulation, verbal or written, whereby the time for the commencement of any action is limited to a time less than that prescribed by law for the commencement of such action is void.

Ala. Code § 6-2-15. Put simply, Alabama voids a contract provision that shortens the applicable statute of limitations. And the applicable statute of limitations in Alabama provides six years to file a claim for breach of contract. Ala. Code § 6-2-34(9) ("Actions upon any simple contract or speciality not specifically enumerated in this section . . . must be commenced within six years.").

To get around the Alabama law, Fabbro contends that Maryland law should control based on the agreement's choice-of-law provision. The agreement's choice-of-law provision indeed states that "this Agreement, the Franchise, and all claims arising from the relationship between us and you will be governed by the laws of the State of Maryland." Doc. 1-1 at 45. And Maryland law generally enforces contract provisions that shorten statutes of limitations. *Ceccone v. Carroll Home Servs., LLC*, 454 Md. 680, 693–94 (Md. 2017) ("Parties may agree to a provision that modifies the limitations result that would otherwise pertain provided (1) there is no controlling statute to the contrary, (2) it is reasonable, and (3) it is not subject to other defenses such as fraud, duress, or misrepresentation.") (citation omitted). The issue is thus choice of law: should the court apply the Alabama law that voids

8

abbreviated periods or the Maryland law that enforces them?

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S 487, 496 (1941); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). In matters of procedure, "Alabama applies its own procedural law, i.e., the law of the forum." *Precision Gear Co. v. Cont'l Motors, Inc.*, 135 So. 3d 953, 957 (Ala. 2013). For substantive law, since this is a contract case, "Alabama follows the principle of 'lex loci contractus,' which states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991). That is, when there is a valid choice-of-law provision, Alabama courts will apply the substantive law of the chosen jurisdiction.[7] Accordingly, if the Alabama law that voids abbreviated periods of limitations in contracts is procedural, it controls. If it is substantive, the Maryland law enforcing such provisions applies.

In Alabama, "[m]atters are sometimes said to be procedural if they concern methods of presenting to a court the operative facts upon which legal relations

---

[7] AFC Franchising points out that there is an exception to this rule. Alabama will not enforce a choice-of-law provision if (1) the chosen law is contrary to the fundamental public policy of Alabama, (2) Alabama "has a materially greater interest in the determination of the particular issue," and (3) Alabama law would otherwise apply. *See Brown*, 582 So. 2d at 507 (quoting Restatement (Second) of Conflicts of Laws § 187 cmt. g (1971)). The court does not reach this exception.

depend; whereas substantive matters are those which concern the legal effect of those facts after they have been established." *Scrushy v. Tucker*, 70 So. 2d 289, 299 (Ala. 2011) (citation omitted). For example, laws determining the validity of a contract are substantive. *See Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (noting that, in Alabama, the substantive law of the place where the contract was made "governs the validity" of the contract). In contrast, Alabama considers statutes of limitations to be procedural. *Precision Gear*, 135 So. 3d at 957 ("[I]n most instances, statutes of limitations are procedural matters.").[8]

AFC Franchising contends that because Alabama treats statutes of limitations as procedural, and the court must apply Alabama procedural law, the court should ignore the contract's period of limitations. This misses the issue. If the question were whether to apply Alabama's statute of limitations or Maryland's, the answer would be clear. But the question is whether to enforce the contract's period of limitations. Alabama law would void the contract's period of limitations, while Maryland law would enforce it. Thus, the precise issue is whether to apply Alabama or Maryland law regarding the validity of contract provisions that shorten the period

---

[8] Alabama recognizes an exception by which it treats a statute of limitations as substantive. *Precision Gear*, 135 So. 3d at 957 ("[W]e will apply another state's statute of limitations only when it is demonstrates that the limitation is so inextricably bound up in the statute creating the right that it is deemed a portion of the substantive right itself.") (citation omitted). This exception is not at issue here.

of limitations.

Fabbro argues that the Alabama law voiding contract provisions that establish an abbreviated limitations period is substantive. The quintessential example of a substantive contract law is one determining the contract's validity. *See Colonial Life*, 358 F.3d at 1308; *see also Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998) ("The rule of *lex loci contractus* mandates that the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made."). That is precisely what Alabama's law does. It announces that contract provisions establishing an abbreviated period of limitations are "void." Ala. Code § 6-2-15. In that regard, Fabbro's argument is persuasive; unfortunately, it is foreclosed by Alabama precedent.

In *Galliher v. State Mutual Life Insurance Company*, 150 Ala. 543 (1907), the contract at issue, executed in Georgia, also contained a clause "shortening the statute of limitations" that was enforceable in Georgia. *Galliher*, 150 Ala. at 545. However, the suit was filed in Alabama, and Alabama law (then as now) "expressly prohibited" such shortening clauses. *Id.* (citing "section 2802 of the Code of 1896," the precursor to § 6-2-15). Faced with the same issue and law, the court noted that "the lex loci contractus must govern as to the validity, interpretation, and construction of the contract; but the remedy to enforce it . . . must be pursued according to the law

of the forum where the suit is brought." *Id.* at 545 (citation omitted). Because a statute of limitations "does not annul the contract itself, but only takes away the remedy provided by law for its enforcement," the court held that the law of the forum governs statutes of limitations. *Id.* at 546. Translating into modern parlance, statutes of limitations affect the remedy, rather than the validity of a contract, and are thus procedural, rather than substantive.

The *Galliher* court equated the contract provision with a statute of limitations and found it conclusive that Alabama law governs statutes of limitations. One can argue that the period of limitations was contractual, rather than statutory. And that the choice of law was not between an Alabama statute of limitations and a Georgia statute of limitations; it was instead between a Georgia law enforcing such contract provisions, and an Alabama law voiding them. Under this view, because the laws at issue went to the validity of a contract provision—one law said the provision was valid, the other law said it was void—an argument can be made that the *Galliher* court ruled incorrectly.

But even if this alternate contention is correct, this court is bound by the decision of the Alabama Supreme Court. "[A]s a federal court, our role in diversity cases is to interpret state law, not to fashion it." *Simmons Foods, Inc. v. Indus. Risk Insurers*, 863 F.3d 792, 798 (8th Cir. 2017) (citation omitted). And this court is not

inclined to take the extraordinary step, pursuant to an *Erie* guess,[9] of presuming that the Alabama Supreme Court would decide the issue differently today. The court is especially reluctant to do so given that other states, citing *Galliher*, have reached the same result. *See Simmons Foods*, 863 F.3d at 797 & n.6 (citing *Galliher* and holding that Arkansas law treats laws voiding shortened periods in contracts as procedural); *see also Sun Ins. Office, Ltd. v. Clay*, 133 So. 2d 735, 738 (Fla. 1961) (citing *Galliher* and holding that "[w]here the statutes of the forum make void all agreements whereby the time for the brining of actions is fixed at a period less than that prescribed by law, a contractual stipulation made in another jurisdiction is not available as a defense.") (quoting 29A Am. Jur., Insurance, § 1794, p. 865). In the end, "[i]f the [Alabama] Supreme Court or legislature wants to change state law, then they can do so—[this court] cannot." *Simmons Foods*, 863 F.3d at 798.

Bound by *Galliher*, this court finds that § 6-2-15 of the Alabama Code controls.[10] As such, the period of limitations established in the contract is void.

---

[9] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[10] As an afterthought, Fabbro argues that § 6-2-15 violates § 95 of the Alabama Constitution. Section 95 states: "There can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement." Ala. Const. art. 4, § 95. The court is skeptical that § 6-2-15 violates this provision. However, Fabbro offers no support or analysis for her argument, and AFC Franchising does not even bother to respond to it. It is not the court's job to develop arguments for the parties, and the court is not willing to potentially strike down a statute as unconstitutional with so little input from the adversarial process. Because Fabbro failed to substantiate this argument, the court deems it waived. *See NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

Under the applicable statute of limitations, AFC Franchising had six years to bring its claims. Ala. Code § 6-2-34(9). AFC Franchising complied with the statute of limitations.

## V. CONCLUSION AND ORDER

For the foregoing reasons, Fabbro's motion to dismiss, doc. 24, is **DENIED**. Fabbro is **ORDERED** to file her answer to the complaint by December 20, 2019, and the parties are **DIRECTED** to submit by December 31, 2019 a Rule 26 report that sets a discovery cutoff of March 30, 2020. This case is **SET** for a pretrial conference on June 4, 2020 at 1:30 p.m., and a bench trial on July 13, 2020 at 9 a.m., both at the Hugo Black Courthouse in Birmingham.

**DONE** the 6th day of December, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE